Case 1:22-cv-01186-SDG   Document 1-1   Filed 03/24/22   Page 1 of 16

E-FILED IN OFFICE - RJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**22-C-01698-S5**
**3/23/2022 4:36 PM**
**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SHERYL LYNN BISHOP, Individually and as Surviving Spouse of STEVEN GREGORY BISHOP, and as Administrator of the Estate of STEVEN GREGORY BISHOP, Deceased, and PATRICIA FREEMAN, Individually and as Administrator of the Estate of TOMMY DWAYNE JOHNSON, Deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CONTAINERPORT GROUP, INC., <br><br> Defendant. | Civil Action File No.: <br> 22-C-01698-S5 <br><br> **JURY TRIAL DEMANDED** |

**RENEWAL COMPLAINT**

Plaintiffs SHERYL LYNN BISHOP, Individually and as Surviving Spouse of Steven Gregory Bishop, and as Administrator of the Estate of Steven Gregory Bishop, Deceased ("Sheryl Bishop"), and PATRICIA FREEMAN, Individually and as Administrator of the Estate of Tommy Dwayne Johnson, Deceased ("Freeman") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby brings this Renewal Complaint ("Complaint") for damages against Defendant CONTAINERPORT GROUP, INC. ("Defendant" or "Containerport"). In support of this Complaint, Plaintiffs respectfully show the Court as follows:

**RENEWAL ACTION**

1.

This is a renewal action filed pursuant to O.C.G.A. § 9-2-61. The previous suit, filed on March 26, 2021 (Civ. Action No. 21-C-02394-S5) in Gwinnett County State Court, was voluntarily

**EXHIBIT A**

dismissed without prejudice on February 28, 2022, and the dismissal of this action was not based on the merits. Plaintiffs' claims in the present action are the same and based on the same facts and circumstances as the original action.

2.

Plaintiffs properly served Defendant within the statute of limitations and Defendant responded to Plaintiffs' Complaint on April 23, 2021. Plaintiffs are entitled to renew their Complaint against this Defendant. The action renewed herein was not void and was such a valid action as may be renewed under O.C.G.A. § 9-2-61.

3.

Pursuant to O.C.G.A. § 9-2-61, Plaintiffs are entitled to re-file their suit within six months of the dismissal date.

4.

Plaintiffs have paid any and all costs from the dismissed action.

**PARTIES, JURISDICTION AND VENUE**

5.

Plaintiff Sheryl Bishop is a resident of Paulding County, Georgia, who resides at 114 Dogwood Trail, Dallas, Georgia 30157. Sheryl Bishop is the surviving spouse of Steven Gregory Bishop (hereinafter referred to as "Steven Bishop" or "Bishop"), whose death gives rise to this case. Sheryl Bishop is the Administrator of the Estate of Tommy Dwayne Johnson. Accordingly, Sheryl Bishop has standing and capacity and is the proper person to bring the wrongful-death claim asserted herein on behalf of all of Steven Bishop's wrongful-death beneficiaries and the estate claim brought to recover damages for pre-death pain and suffering and funeral expenses.

**EXHIBIT A**

6.

Plaintiff Freeman is a resident of Carroll County, Georgia, who resides at 55 Faithful Dr., Temple, Georgia 30179. Freeman is the surviving sister of Tommy Dwayne Johnson, deceased (hereinafter referred to as "Johnson"), whose death gives rise to this case. Johnson did not have any surviving spouse, parents, or children. Freeman is the Administrator of the Estate of Tommy Dwayne Johnson.  Accordingly, Freeman has standing and capacity and is the proper person to bring the wrongful-death claim asserted herein on behalf of Johnson's next of kin and the estate claim brought to recover damages for pre-death pain and suffering and funeral expenses.

7.

Defendant Containerport is a for-profit corporation organized under the laws of the state of Ohio with its principal place of business at 1340 Depot Street, Suite 200, Cleveland, Ohio, 44116. Containerport is registered to do business in the state of Georgia and can be served by delivering a copy of the Summons and Complaint to its registered agent, Corporation Service Company, at Containerport's registered office, located at 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Defendant is subject to in personam jurisdiction of this Court as Defendant is a trucking company authorized to do business in the State of Georgia. Containerport is engaged in business as an interstate motor carrier transporting goods for compensation, including in and through Gwinnett County, Georgia, and has consented to the jurisdiction of Georgia courts. *Cooper Tire & Rubber Company v. McCall*, 312 Ga. 422 (2021).

**VENUE & JURISDICTION**

8.

This Court has subject matter jurisdiction over all claims asserted in this Complaint.

EXHIBIT A

9.

Venue is proper in this Court because (1) Containerport is a resident of Gwinnett County, Georgia; and (2) Containerport is the tortfeasor in this action.

10.

This court has personal jurisdiction over Containerport because at least one of the tortious acts or omissions that Containerport committed giving rise to this cause of action occurred in the State of Georgia. Further, Containerport has purposefully availed itself of the privilege of conducting activities in the state of Georgia and established minimum contacts sufficient to confer jurisdiction over said defendant. The assumption of jurisdiction over Containerport will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process. The acts and omissions that Containerport committed giving rise to this lawsuit caused the injuries to and deaths of Steven Bishop and Johnson. Both Steven Bishop and Johnson were Georgia residents, and their deaths resulted in damages to Sheryl Bishop, Stephanie Bishop (Steven's daughter), and Johnson's three siblings—all of whom are Georgia residents. Accordingly, the causes of action asserted herein arise directly out of Containerport's activities within the state of Georgia, giving this Court specific personal jurisdiction over the defendant. Further, because Containerport has consented to the jurisdiction of Georgia courts, *Cooper Tire & Rubber Company v. McCall*, 312 Ga. 422 (2021), Containerport is a resident of Georgia subject to general personal jurisdiction.

**APPORTIONMENT OF FAULT**

11.

Under Georgia law, defendants in civil cases may attempt to shift fault to other defendants, or other persons/entities who are not parties to the lawsuit. This is called apportionment.

EXHIBIT A

12.

Although defendants can apportion fault away from themselves in any case, that apportionment will reduce the verdict (and judgment) against them only when Plaintiffs sue more than one defendant. *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 351 (2021).

13.

If Plaintiffs sue only one defendant, that defendant may argue that fault should be apportioned to others during the trial, and the jury may ultimately apportion fault to others, but the single defendant will, itself, be liable for the entire amount of the verdict, without regard to any apportionment. *Id*. In other words, the full amount of the judgment will be entered against the single defendant, without regard to any apportionment, and without any reduction to the judgment as a result of any apportionment. *Id*.

14.

Since Plaintiffs here have sued only one defendant, the jury's apportionment in this case will not affect the Court's judgment, if any, against Defendant Containerport, which will be liable for the entire amount of any verdict in favor of Plaintiffs.

## FACTUAL ALLEGATIONS

15.

On March 27, 2019, Containerport's driver, Celso Arena Velasquez (hereinafter referred to as "Velasquez") was driving an eighteen-wheeler that was owned by Containerport northbound on State Route 92 in Cobb County, Georgia. At that location, State Route 92 is a two-lane road, with one northbound lane and one southbound lane. The speed limit was 55 miles per hour.

Stephanie Jenkins (hereinafter referred to as "Jenkins"), was operating a silver Ford Taurus and following Velasquez.

16.

Velasquez had been traveling at 10-15 miles per hour below the speed limit in a no-passing zone for some time, holding up Jenkins and several other following vehicles. When the line of vehicles left the no-passing zone and arrived at a location where passing was permitted, Jenkins attempted to pass Velasquez in his eighteen-wheeler. At that time, fifty-seven-year-old Steven Bishop, driving a blue Nissan Maxima, was some distance away from Jenkins, heading south in the southbound lane of State Route 92. Forty-six-year-old Johnson was a passenger in Steven Bishop's car.

17.

As Jenkins began to pass the eighteen-wheeler, Velasquez accelerated. Because Velasquez sped up, Jenkins was trapped in the southbound lane making it impossible for her to get around the Containerport eighteen-wheeler and return to the northbound lane before her vehicle and Steven Bishop's vehicle collided. Although Steven Bishop acted prudently and attempted to avoid a collision, and Jenkins attempted to clear the front of Velasquez and return to the northbound lane, Jenkins and Steven Bishop were unable to avoid violently crashing into each other.

18.

The front left of Jenkins's vehicle collided with the front left of the Bishop vehicle. The Bishop vehicle rotated counterclockwise in a northwesterly direction. Jenkins's vehicle rotated counterclockwise in a northerly direction and the rear of Jenkins's vehicle collided with the front left side of the tractor Velasquez was driving.

EXHIBIT A

19.

Steven Bishop and Johnson sustained catastrophic injuries in the crash which resulted in their deaths. Steven and Bishop and Johnson experienced pre-impact fright, shock, and terror and post-impact conscious pain and suffering.

20.

Containerport is a motor carrier with interstate operating authority from the United States Department of Transportation and intrastate operating authority from the state of Georgia. At the time of the crash, Velasquez was operating the eighteen-wheeler in the furtherance of Containerport's business, in the course and scope of his employment for Containerport, and pursuant to Containerport's state and/or federal operating authority.

21.

Steven Bishop and Johnson acted prudently, and neither was negligent in any way that caused or contributed to cause the crash.

## CAUSES OF ACTION

## COUNT I: VICARIOUS LIABILITY

22.

Containerport is responsible for the actions of its drivers under the doctrine of statutory employment, agency, and apparent agency. At the time of the crash, Velasquez was:

(i)     employed by Containerport,

(ii)    driving an eighteen-wheeler owned by Containerport,

(iii)   in the course and scope of his employment for Containerport,

(iv)    under dispatch for Containerport,

(v)     in furtherance of Containerport's business, and

EXHIBIT A

(vi) performing a non-delegable duty of Containerport by operating the eighteen-wheeler under Containerport's operating authority.

23.

Pursuant to O.C.G.A. § 51-2-2 and other applicable law, Containerport, as employer, statutory employer, and/or master, is liable for all damages that resulted from Velasquez's negligence under the doctrine of *respondeat superior*, agency, apparent or ostensible agency, statutory employment, or other applicable law. Further, because Velasquez was performing a non-delegable duty of Containerport, Containerport is liable for its employee's negligence. This negligence includes, but is not limited to, the acts and omissions committed by said driver on March 27, 2019, which are described in this Complaint.

24.

Velasquez was operating a commercial motor vehicle on the public roadways, and therefore owed those on or near the roadway a duty to exercise reasonable or ordinary care in the operation of the eighteen-wheeler. Velasquez had a duty to operate the eighteen-wheeler in a safe and prudent manner in accordance with his training as a professional truck driver and so as not to endanger the lives and welfare of the motoring public. This duty included keeping a proper lookout, paying attention to his surroundings, and operating the eighteen-wheeler at a reasonable and prudent speed in accordance with the conditions then existing. As a professional truck driver, Velasquez also had a duty to operate the eighteen-wheeler in conformance with Georgia law, the Federal Motor Carrier Safety Regulations and industry standards.

EXHIBIT A

25.

Velasquez breached the duties of a professional truck driver and Containerport is liable for those tortious acts and omissions, which include, but are not limited to, one or more of the following:

    a.    failing to operate the eighteen-wheeler in a reasonably prudent, safe, manner, thereby placing the lives and well-being of the public in general, and Steven Bishop and Johnson in particular, in grave danger;

    b.    failing to keep a proper lookout;

    c.    failing to slow down to allow Jenkins to pass and return to the northbound lane before she collided with the Bishop vehicle;

    d.    accelerating when Jenkins was attempting to pass; and

    e.    any additional actions revealed as discovery in this case progresses.

26.

Velasquez committed negligence per se by violating O.C.G.A. § 40-6-42(b), which provides, "Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

27.

Velasquez's conduct in speeding up while Jenkins was attempting to pass constituted reckless driving in violation of O.C.G.A. § 40-6-390 because Velasquez drove his eighteen-wheeler in reckless disregard for the safety of other persons, including Steven Bishop, Johnson, Jenkins and her passenger. Accordingly, Velasquez committed negligence per se by violating O.C.G.A. § 40-6-390.

EXHIBIT A

28.

Velasquez's negligence in one or more of the ways outlined above was a proximate cause of (1) the crash, (2) the resulting injuries to and deaths of Steven Bishop and Johnson, (3) the pre-impact fright, shock, and terror and post-impact conscious pain and suffering sustained by Steven Bishop and Johnson as a result of the crash; and (4) the damages that Steven Bishop's and Johnson's estates, Steven Bishop's wrongful-death beneficiaries, and Johnson's next of kin sustained as a result of the injuries to and deaths of Steven Bishop and Johnson. The crash was foreseeable to Velasquez and could have been avoided had Velasquez acted in a safe and prudent manner as required by law and in accordance with the applicable standards required of professional truck drivers.

29.

Containerport's negligence (committed by and through its employee) in one or more of the ways outlined above was a proximate cause of (1) the crash, (2) the resulting injuries to and deaths of Steven Bishop and Johnson, (3) the pre-impact fright, shock, and terror and post-impact conscious pain and suffering sustained by Steven Bishop and Johnson as a result of the crash; and (4) the damages that Steven Bishop and Johnson, Steven Bishop's and Johnson's estates, Plaintiffs, Steven Bishop's wrongful-death beneficiaries, and Johnson's next of kin sustained as a result of the injuries to and deaths of Steven and Johnson. The crash was foreseeable to Containerport and could have been avoided had Containerport acted in a safe and prudent manner as required by law and in accordance with the applicable standards required of professional truck drivers and motor carriers.

EXHIBIT A

## COUNT II: NEGLIGENT HIRING, SUPERVISION, AND RETENTION

30.

Containerport, in hiring, retaining, training and supervising its employees and contractors, owed a duty to Steven Bishop, Johnson, and the public at large to make use of its property and carry out its operations in a reasonable manner using the due care, skill, and expertise as would an ordinary person so as to not cause foreseeable and unreasonable risks of harm to others.

31.

As a commercial motor carrier, Containerport also had a duty to carry out its motor-carrier operation in conformance to the Federal Motor Carrier Safety Regulations and the industry standards of the trucking industry. This included adopting and implementing reasonably prudent safety management controls, policies, procedures and practices to ensure that its drivers were qualified, competent and adequately trained to safely and prudently operate Containerport's commercial motor vehicles.

32.

Containerport is responsible for the hiring, retention, supervision, and training of employees and contractors to assure the proper execution of the duties of an over-the-road truck driver.

33.

Containerport had a duty to hire, retain, supervise, and train employees and contractors to drive commercial motor vehicles in a reasonable and safe manner.

34.

Containerport breached one or more of these duties in connection with its hiring, retention, training and supervision of Velasquez.

**EXHIBIT A**

35.

Velasquez was a reckless, unqualified, or incompetent commercial truck driver, and the operation of Containerport's eighteen-wheeler by such a reckless, unqualified, or incompetent driver put others in danger. Containerport knew or in the exercise of reasonable care should have known of such lack of qualification, recklessness, or incompetence, and that it put others at risk. Notwithstanding such actual or constructive knowledge, Containerport permitted and required Velasquez to operate its eighteen-wheeler without providing him adequate training and supervision.

36.

Containerport's negligence in hiring, retaining, training and supervising Velasquez was a proximate cause of (1) the crash, (2) the resulting injuries to and deaths of Steven Bishop and Johnson, (3) the pre-impact fright, shock, and terror and post-impact conscious pain and suffering sustained by Steven Bishop and Johnson as a result of the crash; and (4) the damages that Steven Bishop, Johnson, Steven Bishop's estate, Johnson's estates, Plaintiffs, Steven Bishop's wrongful-death beneficiaries, and Johnson's next of kin sustained as a result of the injuries to and deaths of Steven Bishop and Johnson. The crash was foreseeable to Containerport and could have been avoided had Containerport acted in a safe and prudent manner as required by law and in accordance with the applicable standards required of motor carriers in hiring, retaining, training and supervising their drivers.

## COUNT III: WRONGFUL DEATH

37.

The damages claimed by Plaintiffs were proximately caused by the tortious acts and omissions of Containerport.

**EXHIBIT A**

38.

As a direct result of the Defendant's negligent acts and omissions, Steven Bishop and Johnson suffered severe personal injuries resulting in their deaths.

39.

Sheryl Bishop, as the surviving spouse of Steven Bishop, and as the Administrator of Steven Bishop's estate, brings a wrongful-death claim against Containerport pursuant to the Georgia wrongful-death statute, O.C.G.A. §§ 51-4-2 and 51-4-5, to recover all compensatory damages available under Georgia law for the wrongful death Steven Bishop, including (1) the full value of Steven Bishop's life, both economic and intangible, as determined by the enlightened conscience of a fair and impartial jury, including those items having a proven monetary value, such as lost potential lifetime earnings, income, or services and lost intangible items whose value cannot be precisely quantified, such as Steven Bishop's society, advice, example and counsel; and (2) damages for pre-impact and post-impact shock, fright, and terror Steven Bishop experienced prior to his death; all components of the mental and physical pain and suffering endured by Steven Bishop from the time of the crash until he died, which shall include the post-impact fright, shock, and terror he endured; and medical bills, emergency transportation expenses, funeral and burial expenses.

40.

Patricia Freeman, as the Administrator of Johnson's estate, brings a wrongful-death claim against Containerport pursuant to the Georgia wrongful-death statute, O.C.G.A. §§ 51-4-2 and 51-4-5, to recover all compensatory damages available under Georgia law for the wrongful death of Johnson, including (1) the full value of Johnson's life, both economic and intangible, as determined by the enlightened conscience of a fair and impartial jury, including those items having a proven

EXHIBIT A

monetary value, such as lost potential lifetime earnings, income, or services and lost intangible items whose value cannot be precisely quantified, such as Johnson's society, advice, example and counsel; and (2) damages for pre-impact and post-impact shock, fright, and terror Johnson experienced prior to his death; all components of the mental and physical pain and suffering endured by Johnson from the time of the crash until he died, which shall include the post-impact fright, shock, and terror he endured; and medical bills, emergency transportation expenses, funeral and burial expenses.

## COUNT IV: ATTORNEYS' FEES AND EXPENSES OF LITIGATION

41.

Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense.

42.

As a result of Defendant's conduct, Plaintiffs are entitled to recover the necessary expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT V: PUNITIVE DAMGES

43.

In order to deter future actions by the Defendant, punitive damages should be imposed in an amount sufficient to deter such future wrongful action.

44.

The actions of the Defendant demonstrate willful misconduct, malice, wantonness, and that entire want of care which would raise the presumption of conscious indifference to the consequences of such actions.

EXHIBIT A

45.

The Defendant's negligence was so egregious that it rises to the level of reckless disregard for the safety and well-being of the consumer public and constitutes willful and wanton conduct as defined under O.C.G.A. § 51-12-5.1. Such conduct warrants the imposition of punitive damages. Such conduct satisfies a finding of specific intent to cause harm warranting uncapped punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully pray for the following relief:

(a) That summons issue requiring the Defendant to appear as provided by law to answer this Complaint;

(b) That service be had on the Defendant as provided by law;

(c) That Plaintiffs have a trial on all issues and judgment against the Defendant;

(d) That Plaintiffs have and recover from Defendant all **actual, special, compensatory, and punitive damages** for all losses compensable under Georgia law as set forth above, including:

   i. That Sheryl Lynn Bishop **recover all wrongful death damages for the death** of Steven Gregory Bishop;

   ii. That Sheryl Lynn Bishop **recover estate damages for the death of** Steven Gregory Bishop;

   iii. That Sheryl Lynn Bishop recover punitive damages in an amount to be determined by the enlightened conscience of a jury;

   iv. That Patricia Freeman recover all wrongful death damages for the **death** of Tommy Dwayne Johnson;

**EXHIBIT A**

    v.        That Patricia Freeman recover estate damages for the death of Tommy Dwayne Johnson; and

    vi.       That Patricia Freeman recover punitive damages in an amount to be determined by the enlightened conscience of a jury;

(e)    That Plaintiffs recover litigation costs and attorney's fees; and

(f)    For such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of March, 2022.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com
KEVIN M. KETNER
Georgia Bar No. 418233
kevin@pennlawgroup.com
4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655

**THE PENN LAW FIRM**

ERIC PENN
Texas Bar No. 24029767
eric@thepennlawfirm.com
Pro Hac Vice Pending
102 S. Ragsdale Street
P.O. Box 2079
Jacksonville, TX 75766
Telephone: (903)586-7600
Facsimile: (903)586-7676

*Counsel for Plaintiffs*

**EXHIBIT A**